UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION


PATRICIA METCALF O/B/O ANM            CIVIL ACTION NO. 08-cv-1812

VERSUS

U.S. COMMISSIONER SOCIAL              MAGISTRATE JUDGE HORNSBY
SECURITY ADMINISTRATION


## MEMORANDUM RULING

**Introduction**

Patricia Metcalf ("Plaintiff") filed an application for SSI on behalf of her daughter, ANM.  The child was born on December 13, 2004.  She was still an infant when the application was filed in 2006 and when ALJ W. Thomas Bundy issued his decision in April 2007 that found the child not disabled.  The Appeals Council denied a request for review, and Plaintiff filed this judicial appeal.  Pursuant to 28 U.S.C. § 636(c) and the standing order of the district court governing social security cases, the action was referred to the undersigned for decision and entry of judgment. For the reasons that follow, the Commissioner's decision to deny benefits will be affirmed.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990).  "Substantial evidence is more than a scintilla and less than a preponderance.  It is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." <u>Muse v. Sullivan</u>, 925 F.2d 785, 789 (5th Cir. 1991).  A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination.  <u>Johnson v. Bowen</u>, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Three-Step Evaluation**

A three-step evaluation process is used to determine whether a child is disabled under the Act.  <u>See</u> <u>Swist ex rel. Green v. Barnhart</u>, 177 Fed. Appx. 414, 416 (5th Cir. 2006).  The first question is whether the child is engaged in substantial gainful activity, and the ALJ found that ANM was not.  The second question is whether the child has an impairment that is "severe" within the meaning of the regulations.  The ALJ found that ANM suffers from a speech-language delay, which is a severe impairment within the meaning of the regulations. The third question is whether those impairments are medically or functionally equivalent in severity to the impairments listed in the disability regulations.  There is no contention that ANM's impairments met a listed impairment, so the question is whether the impairments functionally equal a listed impairment.

A decision on functional equivalence requires consideration of the child's limitations in six areas or domains. The domains are:

(1) acquiring and using information

(2) attending and completing tasks

(3) interacting and relating with others

(4) moving about and manipulating objects

(5) caring for your self

(6) health and physical well-being.

20 C.F.R. § 416.926a(b)(1). The limitations imposed by an impairment are described in increasing levels of severity: none, moderate, marked and extreme. The child will be considered disabled if he has an extreme limitation in one domain or a marked limitation in two domains. Section 416.926a(d).

Moderate is not specifically defined, but a marked limitation is defined as "more than moderate" but "less than extreme." A marked limitation interferes seriously with the child's ability to independently initiate, sustain or complete activities. It is the equivalent of the functioning you would expect to find on standardized testing with scores that are at least two but less than three standard deviations below the mean. Section 416.926a(e)(2).

An extreme limitation is "more than marked." A child has an extreme limitation when the impairment interferes very seriously with his ability to independently initiate, sustain or complete activities. Extreme is the rating given to the worst limitations, but it does necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning one would expect to find on standardized testing with scores that are at least three standard deviations below the mean. Section 416.926a(e)(3).

**The Testimony**

Plaintiff testified that the child's birth mother was "here and there," and Plaintiff had cared for the child since she was about three months old.  Plaintiff believed that the mother had abused drugs or alcohol while carrying the child.  Plaintiff testified that she applied for SSI for ANM because the child pulls her hair, falls all the time, runs into things, and bumps her head.  Plaintiff said that ANM did not seem like a normal child, was not talking the way she should, and it was difficult to potty train her.  Another relative testified that the child screams a lot and does not get along with other people.  Tr. 136-42.

**Medical Evidence Presented to ALJ**

Dr. Lawhon wrote that she had been the child's pediatrician since birth, the child had shown up for all of her well-child exams in a timely manner, and she had "never displayed any abnormal or problematic behavior while in [the doctor's] office."  The child had been twice administered the Ages and Stages Questionnaire, a developmental screening tool, and she passed within normal limits on both occasions.  Dr. Lawhon wrote that the child's caregiver did tell her at the most recent visit that the child pulls her hair and tends to rock and head bang when frustrated.  Dr. Lawhon wrote that it "may well be a normal behavior for her current age and is a manifestation of frustration."  An evaluation of the behavior was ongoing. Dr. Lawhon concluded: "Therefore as of this point I do not feel she is impaired in any fashion but will await the final results of her evaluation."  Tr. 94.

A non-examining psychologist reviewed the record, including Plaintiff's claims about the child's behavior, and found that the child did not have a medically determinable mental impairment.  Tr. 103-110.  The child was evaluated for speech pathology at Christus Schumpert Hospital in March 2007.  The clinician wrote that the child spoke in unintelligible sentences during the evaluation.  Plaintiff reported that ANM uses 10 to 15 intelligible words, and she throws a fit when not understood.  The clinician witnessed such an episode during the evaluation.  Her impression was that the child had moderate speech-language delay that interfered with her communication.  She recommended therapy sessions for one year.  Tr. 112.

**The ALJ's Decision**

The ALJ reviewed the above evidence and determined that the child had no limitation in any of the five domains except interacting and relating with others.  The regulations regarding the domain provide that an older infant/toddler without an impairment is dependent upon care givers, but she should begin to separate from them.  She should be able to express emotions and respond to the feelings of others.  She should begin initiating and maintaining interactions with adults, play alongside and eventually interact with children of the same age, and be able to spontaneously communicate her wishes or needs, first by gestures and later by speaking words clearly enough that people who know her can understand her most of the time.

The ALJ found that ANM had a "less than marked" limitation in this domain.  He noted evidence that her oral mechanism for speech production was within normal limits, speech therapy was recommended for only one year, and that the clinician found only a moderate delay.  Tr. 28-29.  The child was found not disabled because she did not have marked limitations in two domains or an extreme limitation in one domain.

**The Appeals Council**

Plaintiff was not represented by counsel when she appeared before the ALJ, but she did retain current counsel to present the case to the Appeals Council.  The attorney provided the Appeals Council with 19 pages of additional medical records from Dr. Lawhon (the treating pediatrician) and other sources.  Counsel argued that these records show that the child had marked or even extreme limitations in interacting and relating with others and acquiring and using information.  Tr. 7.

The new records are dated from January through September 2007, so some of them were generated after the ALJ's April 17, 2007 decision. A September 2007 report from Christus Schumpert stated that ANM had been discharged from speech therapy after she "displayed behavioral problems that were very difficult to manage."  Language testing revealed age-appropriate expressive language skills, but testers were unable to obtain receptive language scores because of the child's noncompliance.  A follow-up exam was recommended for six months later.  Tr. 116.

Also included in the records is a report from Shriners Hospital, which reported no orthopedic problems with the child, but noted that she was "somewhat delayed in her speech as well as some minimal activities of daily living, however, her gross motor skills are in check."  She also had some "unexplained behavior disturbances" that could be accentuated because of the lack of parental involvement or could be from a neurological basis.  Tr. 117. The child was recorded as having five or six tantrums during the pediatric occupational therapy evaluation.  Tr. 123-125.

Dr. Lawhon included a letter.  She listed the enclosed documents.  She then wrote: "As far as your domains go you would need physical therapy or occupational therapy to evaluate each one of these ... ."  She added that the child's main problem, in her opinion, was "behavior which impedes learning since she simply refuses certain behaviors or has a tantrum which interrupts that learning at that time."  Tr. 115.

The Appeals Council denied a request for review.  It did not specifically address the new evidence submitted by Plaintiff's attorney.  Rather, it included standard language that it had "considered the additional evidence listed on the enclosed Order of Appeals Council" but "found that this information does not provide a basis for changing the Administrative Law Judge's decision."  Tr. 3-4.

**Issue on Appeal**

Plaintiff argues that it was error for the Appeals Council to not specifically address the additional evidence and argument submitted with her request for review.

**Analysis**

The Fifth Circuit addressed a circuit split in <u>Higginbotham v. Barnhart</u>, 405 F.3d 332 (5th Cir. 2005) and held that the district court should review and consider evidence that the claimant submits to the Appeals Council but failed to present to the ALJ.  That new evidence is considered part of the record on appeal and, when the Appeals Council considers it, the evidence constitutes evidence upon which the decision complained of is based.

Plaintiff argues that it was error for the Appeals Council to not specifically address the additional evidence and argument she submitted for the first time in connection with the request for review.  Plaintiff points to the agency's HALLEX manual provision that the Appeals Council must "specifically address additional evidence or legal arguments or contentions submitted in connection with the request for review."  The Fifth Circuit has noted, however, that the requirement of a detailed discussion of additional evidence was suspended by a memorandum from the Executive Director of Appellate Operations in 1995. <u>Higginbotham</u>, 405 F.3d at 335 n.1.

A claimant in a similar situation argued in <u>Jones v. Astrue</u>, 228 Fed. Appx. 403 (5th Cir. 2007) that the district court should have remanded the case because the Appeals Council did not explain the weight that it gave to new evidence presented to the council but not the ALJ.  The <u>Jones</u> panel interpreted <u>Higginbotham</u> to be a determination that such an explanation is not required.  <u>Jones</u>, 228 Fed. Appx. at 407.  Plaintiff urges that the unpublished <u>Jones</u> decision should be disregarded because it is not binding precedent under

Fifth Circuit rules.  The unpublished decision may, however, be considered persuasive.  The court may similarly consider, but is not bound by, district court decisions such as McGee v. Astrue, 2009 WL 2841113, *5 (W.D. La. 2009) and Simon v. Astrue, 2008 WL 245383 n.3 (N.D. Tex. 2008), both of which read Higginbotham and Jones to reject Plaintiff's argument.

On the other hand, Newton v. Apfel, 209 F.3d 448, 459 (5th Cir. 2000) held that the HALLEX provision does not carry the authority of law but must be followed by the agency where the rights of individuals are affected.  The agency decision cannot stand if prejudice results from the violation, but Newton found that the claimant before it was not prejudiced by the violation. Newton did not mention the executive director's suspension memorandum. See also Speights v. Barnhart, 2004 WL 3331910 (M.D. La. 2004) (citing Newton, noting uncertainty about whether the HALLEX provision was still suspended, and remanding due to the Appeals Council's lack of explanation of new evidence).

It would certainly be preferable if the agency would explain the weight, if any, it affords evidence submitted for the first time to the Appeals Council.  It may be unrealistic to expect the overburdened Appeals Council to give detailed reasons in all of the many such cases presented to it, but the result of a lack of reasoning behind the agency decision is that it leaves the court guessing as to the agency's rationale and makes it difficult for the court to fulfill its limited role of reviewing the agency decision for substantial evidence.

When an ALJ has failed to address a significant line of evidence in his decision, this court has sometimes reversed and remanded so that it would not be put in the position of

weighing the overlooked evidence and in effect deciding the case de novo.  See, e.g., GST

v. Commissioner, 2009 WL 3031678 (W.D. La. 2009).  See also Audler v. Astrue, 501 F.3d

446 (5th Cir. 2007) (reversing when ALJ failed to state any reason for adverse determination

at step three despite evidence to support the claim).  The court has not, however, reversed in

such cases unless the omission was so significant as to prevent effective judicial review or

deprived the agency decision of substantial supporting evidence. The undersigned reads the

Fifth Circuit's most recent comments on the issue to suggest a similar procedure. It is not

appropriate to automatically reverse merely because the Appeals Council failed to explain

the weight it afforded evidence first presented to it. The district court is to, instead, consider

the record and determine whether the final decision is supported by substantial evidence.

Reasonable arguments can be made in favor of a different procedure and it is perhaps

arguable as to whether the Fifth Circuit's recent comments are precedential.   The

undersigned attempts to follow the guidance of the Fifth Circuit, even when it is not

mandatory or controlling, and finds that the announced course is the most faithful to the Fifth

Circuit's comments on this issue.

The evidence submitted to the Appeals Council, even if all of it is considered relevant

to the time period at issue, is not so compelling as to deprive the Commissioner's decision

of substantial evidence.  The treating pediatrician originally stated that the child had never

exhibited any problematic behavior while in her presence, and the child had tested within

normal limits for her age.  The more recent evidence showed that the child was discharged

from speech evaluation due to age-appropriate speech, but the child had exhibited some

behavioral problems.  Dr. Lawhon opined that the behavior "impedes learning" and merited

psychiatric care.  When all of the evidence is considered together, there were still credible

evidentiary choices that the agency could make to determine that the child had moderate or

"less than marked" limitations in the domains of interacting and relating with others and

acquiring and using information. Counsel reports that the child was, in connection with a

later application, found to be disabled, so perhaps the more recent evidence submitted to the

Appeals Council was indicative of a developing or worsening of the behavioral problem.

When the period at issue is reviewed, there is at best mixed evidence, and findings of marked

limitations are not required.  Accordingly, a judgment affirming the Commissioner's decision

will be entered.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 18th day of December,

2009.


_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE